UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ALBERTO GARCIA, et al.,<br><br>          Petitioner,<br><br>   v.<br><br>CAMMILLA WAMSLEY, et al.,<br><br>          Respondent. | Case No. 2:25-cv-01980-TMC<br><br>ORDER GRANTING IN PART MOTION FOR ATTORNEY'S FEES |

## I.    INTRODUCTION

Petitioners Alberto Garcia, Fernando Rangel-Saucedo, and Ismael Ortiz Montoya obtained habeas relief when this Court held they had been unlawfully subject to mandatory immigration detention without an opportunity for bond. Dkt. 11. After securing the writ, all three petitioners were released from custody because they were otherwise bond eligible. Dkt. 23 ¶¶ 6–8. Their habeas petition was the first group petition brought to enforce the declaratory judgment entered in *Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297, 1336 (W.D. Wash. 2025). All three petitioners were class members, and they were represented by class counsel from the Northwest Immigrant Rights Project (NWIRP), who have since filed group petitions on a weekly basis to obtain efficient relief for as many class members as possible. *See, e.g.*, *Tiul Caal v. Hernandez*, No. 2:26-cv-00850-TMC, 2026 WL 754035 (W.D. Wash. Mar. 17, 2026); *Su v.*

ORDER GRANTING IN PART MOTION FOR ATTORNEY'S FEES - 1

*Hernandez*, No. 2:26-cv-00765-TMC, 2026 WL 675287 (W.D. Wash. Mar. 10, 2026); *Flores-Velazquez v. Hermosillo*, No. 2:26-cv-00600-TMC, 2026 WL 523283 (W.D. Wash. Feb. 25, 2026).

Petitioners now move for an award of attorney's fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2142(d). Dkt. 13. They ask for fees at market rates rather than statutory EAJA rates given the complexity of both the underlying litigation and the enforcement process resulting from Respondents' failure to comply with the *Rodriguez Vazquez* declaratory judgment. *Id.* at 2–3. Respondents agree that Petitioners were the prevailing parties. But they argue that fees should be denied because their legal positions are substantially justified, and alternatively if fees are awarded, they should be limited to the statutory rates. *See* Dkt. 22 at 1–2.

For reasons similar to those explained in *M.M. v. Hermosillo*, No. 2:25-cv-02074-TMC, 2026 WL 252076 (W.D. Wash. Jan. 30, 2026), and *Rodriguez Vazquez v. Hermosillo*, --- F. Supp. 3d ---, 2026 WL 102461 (W.D. Wash. Jan. 14, 2026), the Court concludes that Petitioners are entitled to attorney's fees under the EAJA. When Petitioners were denied bond in immigration court, the immigration judge (IJ) concluded that each would be entitled to bond if the IJ had jurisdiction to grant it. The IJ thus entered an "alternative" order setting a bond amount if jurisdiction existed. This Article III Court then entered a declaratory judgment that the IJs did have jurisdiction to grant bond because applying mandatory detention to noncitizens such as Petitioners violates the law. *Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d at 1336. But rather than follow that judgment, the government kept Petitioners detained.

Because the *Rodriguez Vazquez* declaratory judgment was binding on the parties to the case, and the defendants did not seek a stay of the judgment pending appeal, there was no reasonable basis for the government to ignore the judgment and force class members to file habeas petitions as their only means of seeking relief from unlawful detention. Respondents'

ORDER GRANTING IN PART MOTION FOR ATTORNEY'S FEES - 2

position was therefore not substantially justified, and their new arguments in defense of these decisions remain unpersuasive.

Petitioners also meet the standard for receiving attorney's fees at market rates; however, the Court will award fees based on evidence of the prevailing market rates in this district rather than the requested Fitzpatrick Matrix. Because Petitioners are entitled to fees under the EAJA, the Court does not address their arguments that fees would also be warranted as a sanction for bad-faith litigation conduct.

## II.    LEGAL STANDARD

"The EAJA provides . . . that in an action brought by or against the United States, a court must award fees and expenses to a prevailing non-government party 'unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.'" *Medina Tovar v. Zuchowski*, 41 F.4th 1085, 1089 (9th Cir. 2022) (quoting 28 U.S.C. § 2412(d)(1)(A)). "For the court to award attorney's fees and costs pursuant to the EAJA, it must be shown that (1) the plaintiff is the prevailing party; (2) the government has not met its burden of showing that its positions were substantially justified or that special circumstances make an award unjust; and (3) the requested attorney's fees and costs are reasonable." *Perez-Arellano v. Smith*, 279 F.3d 791, 793 (9th Cir. 2002).

"It is the government's burden to show that its position was substantially justified." *Medina Tovar*, 41 F.4th at 1089. Substantially justified means "justified to a degree that could satisfy a reasonable person." *Meier v. Colvin*, 727 F.3d 867, 870 (9th Cir. 2013) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). "Put differently, the government's position must have a 'reasonable basis both in law and fact.'" *Id.* (quoting *Pierce*, 487 U.S. at 565). The court examines "both the government's litigation position and the underlying agency action giving rise

to the civil action." *Id.* Whether the government's position was substantially justified is a matter of discretion for the district court. *Id.* at 869.

With respect to the reasonableness of fees and costs, EAJA provides that "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). A court may award market rates based on the limited availability of qualified attorneys when the attorneys possess (1) "distinctive knowledge and specialized skill" that was (2) "needful to the litigation in question" and (3) "not available elsewhere at the statutory rate." *Nadarajah v. Holder*, 569 F.3d 906, 912 (9th Cir. 2009) (citation modified).

Under Federal Rule of Civil Procedure 54(d)(2)(C), when ruling on a motion for attorney's fees, the Court "must find the facts and state its conclusions of law as provided in Rule 52(a)," meaning "the court must find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a)(1), 54(d)(2)(C).

### III.   FINDINGS OF FACT

1.   Petitioner Garcia entered the United States over thirty years ago. Dkt. 1 ¶ 4. He had no criminal history and worked as a painter. Dkt. 3-3 at 3. Immigrations & Customs Enforcement (ICE) officers arrested him on August 11, 2025 while they were looking for someone else, and he was detained at the Northwest ICE Processing Center (NWIPC) in Tacoma, Washington. *Id.* at 3–4.

2.   The Department of Homeland Security (DHS) placed Garcia in removal proceedings before the Tacoma Immigration Court, charging him as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) for having entered the United States without inspection. Dkt. 3-2.

ORDER GRANTING IN PART MOTION FOR ATTORNEY'S FEES - 4

3.    On August 28, 2025, an IJ denied Garcia's bond request based on lack of jurisdiction, finding that Garcia was subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). The IJ ruled in the alternative that if mandatory detention did not apply, bond would be set at $5,000. Dkt. 3-1 at 2–3.

4.    Petitioner Rangel-Saucedo entered the United States approximately twenty years ago. Dkt. 1 ¶ 7. ICE officers arrested Rangel-Saucedo during a traffic stop on June 8, 2025 and detained him at NWIPC. Dkt. 3-4 at 3–4. He had no criminal history. *Id.*

5.    DHS placed Rangel-Saucedo in removal proceedings before the Tacoma Immigration Court, charging him as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) for having entered the United States without inspection. Dkt. 3-5.

6.    On June 24, 2025, an IJ denied Rangel-Saucedo's bond request based on lack of jurisdiction, finding he was subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). Dkt. 3-6 at 2. The IJ ruled in the alternative that if mandatory detention did not apply, bond would be set at $15,000. *Id.*

7.    Petitioner Ortiz Montoya entered the United States approximately 35 years ago. Dkt. 1 ¶ 11. ICE officers arrested him on April 23, 2025 and eventually detained him at NWIPC. Dkt. 3-7 at 3–4; Dkt. 3-9.

8.    DHS placed Ortiz in removal proceedings, charging him as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) for having entered the United States without inspection. Dkt. 3-8.

9.    On May 22, 2025, an IJ at the Tacoma Immigration Court denied Ortiz Montoya's bond request based on lack of jurisdiction, finding he was subject to mandatory

detention under 8 U.S.C. § 1225(b)(2)(A). Dkt. 3-9 at 2. The IJ ruled in the alternative that if mandatory detention did not apply, bond would be set at $5,000. *Id.*

10. On September 30, 2025, in a case then captioned *Rodriguez Vazquez v. Bostock*, this Court granted summary judgment to members of a certified Bond Denial Class, defined to include the following individuals:

> [A]ll noncitizens without lawful status detained at the Northwest ICE Processing Center who (1) have entered or will enter the United States without inspection, (2) are not apprehended upon arrival, (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the noncitizen is scheduled for or requests a bond hearing.

> 802 F. Supp. 3d 1297, 1336 (W.D. Wash. 2025).

11. The Court issued the following declaratory relief:

> The Court declares that Bond Denial Class members are detained under 8 U.S.C. § 1226(a) and are not subject to mandatory detention under 8 U.S.C. § 1225(b)(2). The Court further declares that the Tacoma Immigration Court's practice of denying bond to Bond Denial Class members on the basis of § 1225(b)(2) violates the Immigration and Nationality Act.

> *Id.*

12. The Court entered judgment in favor of the Bond Denial Class the same day. *See Rodriguez Vazquez v. Hermosillo*, No. 3:25-cv-05240-TMC, at Dkt. 66.

13. On October 13, 2025, Petitioners sought a writ of habeas corpus ordering their release on bond. Dkt. 1 at 6. All three Petitioners were *Rodriguez Vazquez* class members; for purposes of being bound by the judgment, they were parties to that case. *See Devlin v. Scardelletti*, 536 U.S. 1, 7–8 (2002). When the Court issued its judgment, it declared that their mandatory detention was illegal.

ORDER GRANTING IN PART MOTION FOR ATTORNEY'S FEES - 6

14. Yet, as alleged in the petition, Respondents continued "to subject Petitioners to unlawful detention despite their clear entitlement to release on bond as Bond Denial Class members." Dkt. 1 ¶ 15.

15. Respondents did not contest this allegation. To the contrary, while conceding Petitioners were class members, Respondents confirmed in their return that Petitioners were seeking relief "from their mandatory immigration detentions" and Respondents "continue to believe Petitioners are subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)." Dkt. 9 at 1–2.

16. On October 21, 2025, the Court granted the habeas petition and ordered all three Petitioners released on their alternative bond orders. Dkt. 11.

17. On October 28, 2025, Respondents appealed the *Rodriguez Vazquez* declaratory judgment to the Ninth Circuit Court of Appeals. *See Rodriguez Vazquez*, No. 3:25-cv-05240-TMC, at Dkt. 71. That appeal remains pending.

18. Respondents have never sought a stay of the declaratory judgment from either this Court or the Court of Appeals.

19. Petitioners now seek an award of $25,471.80 in attorney's fees and costs under the EAJA, which includes their briefing on this motion. Dkts. 13, 25.

20. Respondents do not dispute that Petitioners are the prevailing party or challenge the hours expended by Petitioners' counsel. Dkt. 22 at 3. Instead, Respondents argue that attorney's fees should be denied because their position was substantially justified, and alternatively that if fees are awarded, they should be limited to the EAJA's statutory rates. Dkt. 22 at 4–10.

21. With respect to Petitioners' request for market rates, Respondents do not dispute that Petitioners' counsel possess "distinctive knowledge and specialized skill" in

ORDER GRANTING IN PART MOTION FOR ATTORNEY'S FEES - 7

immigration law. *See* Dkt. 22 at 9; *Nadarajah*, 569 F.3d at 912. The distinctive knowledge and skill of counsel from NWIRP is well supported by the record. *See, e.g.*, Dkt. 15 at ¶¶ 2–16; Dkt. 16 ¶ 8; Dkt. 17 ¶¶ 14–17.

22. They argue, however, that Petitioners have not shown those skills were "needful to the litigation in question" and "not available elsewhere at the statutory rate." *Nadarajah*, 569 F.3d at 912.

23. But Respondents have not submitted any evidence or cited any authority in support of these arguments. *See* Dkt. 22 at 9.

24. In contrast, to support their claim to enhanced fees, Petitioners submit declarations from Robert Pauw (Dkt. 16), Stacy Tolchin (Dkt. 17), Trina Realmuto (Dkt. 18), and Nicholas Gellert (Dkt. 19).

25. Mr. Pauw has practiced immigration law since 1987 and taught it for 25 years. Dkt. 16 ¶ 2. He has extensive experience litigating immigration cases in federal court. *Id.* ¶ 3. Pauw opines that there is "a shortage of lawyers in Washington State with the knowledge and skill required to competently handle federal immigration litigation in general and complex cases like this one in particular." *Id.* ¶ 6. Pauw attests to the complexity of the underlying *Rodriguez Vazquez* litigation, that the arguments made by Petitioner's counsel "laid the groundwork for hundreds of federal court decisions across the country rejecting *Matter of Yajure-Hurtado*" and that "NWIRP provided template habeas petitions and advisories that hundreds of attorneys throughout the country have relied on." *Id.* ¶ 9. He also opines that NWIRP's "ability to expeditiously respond" to the government's noncompliance through group habeas petitions "on behalf of any class member who reaches out to them, demonstrates both their intimate

knowledge of the legal issues and the history of this case." *Id.* ¶ 11. Finally, Pauw states that "successfully vindicating the petitioners' rights here required a level of skill and knowledge and perseverance that is unavailable in Washington at the statutory rate provided under the" EAJA. *Id.* ¶ 12.

26. Ms. Tolchin has practiced law for over 24 years and specializes in "immigration-related litigation before the federal courts." Dkt. 17 ¶¶ 3–6. She is also experienced in fee litigation under the EAJA and has co-authored a practice advisory on EAJA fees. *Id.* ¶ 7. She opines that "the expertise of Petitioners' counsel was essential to the success" of habeas petitions enforcing *Rodriguez Vazquez*, and that "[t]his expertise is especially important because most persons in detention do not have attorneys and do not have the resources to retain an attorney. NWIRP's expertise is also critical in obtaining relief in a quick and efficient manner in order to avoid additional weeks in detention." *Id.* ¶ 11. Tolchin attests that she has reviewed the hours expended by Petitioners' counsel, and notes that "because of their experience and skills, NWIRP was able to successfully litigate this claim expending far fewer hours than would have been required by other litigators to vindicate the class members' rights." *Id.* ¶ 20. Tolchin concludes that the rates sought by NWIRP "are significantly lower than the market rates for attorneys of similar experience in Central California, where I reside. I do not believe that this work could have been done by any attorney at the EAJA rate, adjusted for inflation." *Id.* ¶ 21.

27. Ms. Realmuto has practiced immigration law since the late 1990s and is currently the Executive Director of the National Immigration Litigation Alliance. Dkt. 18 ¶ 2. Her career "has focused on federal court and immigration litigation." *Id.* ¶ 4.

ORDER GRANTING IN PART MOTION FOR ATTORNEY'S FEES - 9

Realmuto writes that she knows "of no other attorneys in Washington State" who would have been able to litigate the underlying *Rodriguez Vazquez* class action. *Id.* ¶ 14. She further attests that "Defendants' refusal to abide by this Court's declaratory judgment creates novel compliance issues that, frankly, in my years of experience, were previously unheard of" and that "the expertise of NWIRP counsel was essential to the quick success of the group habeas petition to enforce the declaratory judgment." *Id.* ¶ 15. She opines that "I do not believe that the petitioners could have located counsel with the level of expertise required for success at EAJA statutory rates, even adjusted for inflation." Finally, she notes that the rates sought by Petitioner's counsel are lower than those awarded by this district in other cases where she has worked with Petitioner's counsel Mr. Adams. *Id.* ¶ 17.

28.    Mr. Gellert is Senior Counsel at Perkins Coie and has practiced there since 1988. Dkt. 19 ¶ 1. His pro bono practice has included significant immigration litigation in federal court. *Id.* ¶¶ 3–4. Mr. Gellert has also been involved for many years with the Legal Foundation of Washington and the Washington State Access to Justice Board, which has provided him additional familiarity with the fees charged and awarded in complex civil rights litigation. *Id.* ¶ 5–6. Mr. Gellert states that in a case he co-counseled with Mr. Adams in this district, the court awarded Mr. Adams $815 per hour for work performed in 2018. *Id.* ¶ 11. Mr. Gellert also opines that a reasonable market rate in Washington state for someone with Mr. Adams's level of experience "is between $900–$1,100 per hour, if not even higher." *Id.* ¶ 15.

29.    Respondents have not submitted evidence to rebut these declarations.

ORDER GRANTING IN PART MOTION FOR ATTORNEY'S FEES - 10

## IV.    CONCLUSIONS OF LAW

1.    Petitioners are the prevailing party. 28 U.S.C. § 2412(d)(1)(A).

2.    Respondents' position was not substantially justified.

3.    This ruling is not about the underlying statutory interpretation dispute in *Rodriguez Vazquez.* Indeed, this Court has denied a motion for attorney's fees and found the government's position substantially justified in a case where the government opposed habeas relief while the dispositive motions in *Rodriguez Vazquez* remained pending. *Guzman Alfaro v. Wamsley*, No. 2:25-cv-01706-TMC, Dkt. 24 (W.D. Wash. Jan. 23, 2026).[1] Nor is it about the litigation conduct of the attorneys from this district's United States Attorney's Office who have handled the enforcement habeas petitions. As best this Court can tell, those attorneys have worked admirably and cooperatively to reach agreed briefing schedules, concede class membership where appropriate, and otherwise reduce the strain on the parties and the Court from these proceedings.

4.    But to determine whether the government has met its burden to show that its action was substantially justified, courts must examine "both the government's litigation position and the underlying agency action giving rise to the civil action." *Meier*, 727 F.3d at 870.[2]

---

[1] For this reason, there is no basis to stay determination of fees in the habeas enforcement actions to await resolution of the *Rodriguez Vazquez* appeal, and Respondents' request for such a stay (Dkt. 22 at 2–3) is denied. Respondents are free, of course, to appeal the award of fees.

[2] The Court notes that in the introduction to their brief, Respondents argue that "Petitioners have not carried their burden to show that Federal Respondents' position lacked substantial justification." Dkt. 22 at 2. This is the wrong standard; the government carries the burden to show that its position was substantially justified. *Medina Tovar*, 41 F.4th at 1089.

ORDER GRANTING IN PART MOTION FOR ATTORNEY'S FEES - 11

5.   Here, Respondents cannot meet that burden because of the underlying agency action that required Petitioners to file this habeas petition.

6.   Respondents continued to subject Petitioners to mandatory detention after this Court had already entered a judgment granting relief to a certified class of detainees that included Petitioners and declaring they were not subject to mandatory detention. *See Rodriguez Vazquez*, 802 F. Supp. 3d at 1336.

7.   Although the government appealed that judgment (after the habeas proceedings in this case concluded), it has never sought to stay it.

8.   It is a "basic proposition" that "all orders and judgments of courts must be complied with promptly." *Maness v. Meyers*, 419 U.S. 449, 458 (1975). "If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal." *Id.*

9.   But instead, the federal agency defendants in *Rodriguez Vazquez* have chosen to ignore the declaratory judgment, forcing class members to file habeas petitions as their only means of seeking relief from unlawful mandatory detention. *See Rodriguez Vazquez v. Hermosillo*, --- F. Supp. 3d ----, 2026 WL 102461, at *2–3 (W.D. Wash. Jan. 14, 2026).

10.  This Court recently explained in a detailed order why those agencies are incorrect in their position that the declaratory judgment is merely "advisory." *See id.* at *6. That reasoning is incorporated here.

11.  For those same reasons, Petitioners should never have been forced to file this habeas petition. Although Federal Respondents conceded Petitioners' membership in the Bond Denial Class in their return to the habeas petition, *see* Dkt. 9 at 3, that

ORDER GRANTING IN PART MOTION FOR ATTORNEY'S FEES - 12

does not change the reality that the fees and costs incurred here were solely the result of the government's unreasonable decision to ignore the class judgment in *Rodriguez Vazquez*.

12. Respondents' arguments in opposition to this motion remain unpersuasive. They do not address any of the cases cited by Petitioners about adherence to declaratory judgments. Instead, Respondents argue, without citation to any authority, that although the Court "had the legal authority to declare the law," they were not required "to take any particular action in response to the Court's order," and instead were "required to follow their own contrary binding precedent in *Matter of Yajure-Hurtado*, 29 I&N Dec. 216 (BIA 2025)." Dkt. 22 at 5. Respondents then cite authority that the decision of a district judge "is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Id.* (citing *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011)). They argue that district court decisions "do not definitively resolve statutory or constitutional questions for all future habeas petitioners. They do not bind other courts, do not displace agency precedent, and do not eliminate the government's ability to seek further clarification through continued litigation and appellate review." *Id.* at 6. They then point out that "the government is not subject to non-mutual offensive collateral estoppel and may litigate the same legal issue in cases involving different parties in subsequent litigation." *Id.* (citing *United States v. Mendoza*, 464 U.S. 154, 160–63 (1984)).

13. The critical flaw in all these arguments is that they overlook the defining feature of a declaratory judgment: it is not a declaration of the law in the abstract, but a declaration of the law as applied between specific parties who have a concrete

ORDER GRANTING IN PART MOTION FOR ATTORNEY'S FEES - 13

dispute in the litigation. *See* 28 U.S.C. § 2201(a) ("In a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration . . . ."); *City & Cnty of San Francisco v. Garland*, 42 F.4th 1078, 1087 (9th Cir. 2022) ("What makes a declaratory judgment a proper judicial resolution of a case or controversy rather than an advisory opinion is the settling of some dispute which affects the behavior of the defendant towards the plaintiff.") (citation modified).

14. This Court has never suggested that *Rodriguez Vazquez* is "binding precedent" on any other judge or district, much less that it "definitively resolves" the statutory question. The Court did not attempt to vacate *Yajure-Hurtado*, enjoin Respondents' nationwide practice, or constrain the government's ability to appeal. It has not claimed that the government is somehow estopped from making its statutory arguments "in cases involving different parties." What the Court did do, as required by the Declaratory Judgment Act and decades of precedent, was enter a judgment declaring the law as it applies *between the parties* in *Rodriguez Vazquez* itself, which includes DHS, EOIR, and the Tacoma Immigration Court as defendants, and all members of the certified class (including these habeas petitioners) as plaintiffs. *See Devlin*, 536 U.S. at 7–8. So, when a *Rodriguez Vazquez* class member appears in Tacoma Immigration Court before a *Rodriguez Vazquez* defendant and requests a bond hearing, longstanding precedent expects the government to follow the federal court's declaration of the law between those parties, even as the government can continue to argue about the meaning of 8 U.S.C. § 1225 and apply *Yajure-Hurtado* in any other context. *See United Aeronautical Corp. v. United States Air Force*, 80 F.4th 1017, 1031 (9th Cir.

2023); *Rincon Band of Mission Indians v. Harris*, 618 F.2d 569, 575 (9th Cir. 1980).

15.    Respondents' position was therefore not substantially justified, and there are no other special circumstances that would make an award of fees under the EAJA unjust. *See* 28 U.S.C. § 2412(d)(1)(A).

16.    Petitioners are entitled to an award of attorney's fees at market rates based on the "limited availability of qualified attorneys for the proceedings involved." *See id.*

17.    It is undisputed that Petitioners possess "distinctive knowledge and specialized skill" in immigration law, and particularly immigration litigation in federal court. *See Nadarajah*, 569 F.3d at 912.

18.    There is no serious question that this distinctive knowledge and specialized skill was necessary for the underlying *Rodriguez Vazquez* class action—a complex case that was one of the first to address a novel interpretation of § 1225 that continues to be litigated throughout the country.

19.    One could argue that the habeas petitions enforcing *Rodriguez Vazquez* are less complex. Some of these petitions are filed by other local immigration attorneys, and the issues are generally defined by the scope of what was already decided in the class action.

20.    But that view would overlook that the relevant "proceedings involved" here are the group habeas petitions brought by class counsel from NWIRP on a weekly basis. *See* 28 U.S.C. § 2412(d)(2)(A). As attested to by the supporting declarations from Pauw, Tolchin, and Realmuto, NWIRP's distinctive knowledge and skill has allowed them to identify detained class members (many of whom might otherwise not be able to find or afford retained counsel) and bring their

ORDER GRANTING IN PART MOTION FOR ATTORNEY'S FEES - 15

claims in weekly group petitions that ultimately require far fewer hours than would otherwise be expended were each claim brought individually. *See M.M.*, 2026 WL 252076, at *3 (awarding $7,041.09 in EAJA fees and costs for single enforcement petition). NWIRP's expertise and development of the enforcement strategy—which, as the supporting declarations explain, they have freely shared with colleagues—has also helped enable other attorneys to bring individual enforcement petitions. The Court therefore concludes that NWIRP counsel's specialized skill was "needful to the litigation in question." *Nadarajah*, 569 F.3d at 912.

21.   The unrebutted Pauw, Tolchin, and Realmuto declarations also support that attorneys with this type of knowledge and skill are not available elsewhere at the statutory EAJA rate. *See id.* at 915 (unrebutted declarations are sufficient to support this prong).

22.   Hourly rates are reasonable when the "requested enhanced rates are 'in line with those rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *Id.* at 916 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 & n.11 (1984)). Because courts in the Ninth Circuit and this district have historically been skeptical of fee matrices, this Court will instead look to attorney affidavits and rate determinations in other cases to determine the prevailing community rates. *See Koonwaiyou v. Blinken*, 724 F. Supp. 3d 1222, 1235 (W.D. Wash. 2024) (citing *United Steelworkers of Am. V. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)); *see also Rahman v. Bondi*, No. 2:24-cv-02132-JHC-TLF, 2026 WL 323046, at *5–6 (W.D. Wash. Feb. 6, 2026).

ORDER GRANTING IN PART MOTION FOR ATTORNEY'S FEES - 16

23.    Based on the Pauw declaration (Dkt. 16 ¶ 13); the Tolchin declaration (Dkt. 17 ¶ 21); the Realmuto declaration (Dkt. 18 ¶ 17); the Gellert declaration (Dkt. 19 ¶ 15); the rates recently awarded in *Koonwaiyou* and *Rahman*; and Respondents' failure to provide any contradictory evidence, the Court finds the following hourly rates to be reasonable: $900 per hour for Matt Adams, $650 per hour for Glenda Aldana Madrid and Leila Kang, $550 per hour for Aaron Korthuis, and $255 for paralegal Sydney Maltese.[3]

24.    Respondents have not challenged the number of hours expended: 7.2 hours for Matt Adams; 2.85 hours for Glenda Aldana Madrid; 4.2 hours for Leila Kang; 17.8 hours for Aaron Korthuis; and 5.5 hours for Sydney Maltese. *See* Dkt. 25-1.

25.    The Court therefore awards Petitioners $22,255.00 in attorney's fees.

26.    The Court awards Petitioners $5.00 in costs. *See* Dkt. 25-1.

## V.    CONCLUSION

Because Respondents' position was not substantially justified and Petitioners are entitled to fees at market rates, the motion for attorney's fees (Dkt. 13) is GRANTED IN PART as set forth above. Petitioners are awarded fees and costs under the EAJA in the amount of $22,260.00. The judgment shall be amended to include this award in favor of Petitioners.

Dated this 19th day of March, 2026.

Tiffany M. Cartwright
United States District Judge

---

[3] Respondents acknowledge that paralegal fees can be recovered at market rates, but they then contest Ms. Maltese's rate based on average *wage* statistics for paralegals, not *billing* rates. Dkt. 22 at 8. That is not the relevant metric. *See Richlin Sec. Service Co. v. Chertoff*, 553 U.S. 571, 581 (2007). In the absence of any contradictory evidence, the Court awards Ms. Maltese's requested rate.

ORDER GRANTING IN PART MOTION FOR ATTORNEY'S FEES - 17